## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

John Smith,                          )
                                     )
      Plaintiff,              )
                                     )
v.                                   )      CIVIL ACTION  3:18cv121-MPM-RP
                                     )
JP Foods LLC, and Aucallutim         )
LLC,                                 )
                                     )
      Defendants.             )

## COMPLAINT

Comes now the Plaintiff, John Smith, ("hereinafter Plaintiff") through his undersigned counsel and files his Complaint under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 *et seq* for declaratory and injunctive relief.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.     This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and its implementing regulations, and this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.     Venue is proper in this Court, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Mississippi.

3.     Plaintiff, John Smith, was diagnosed with diabetes forty-one years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Therefore, Mr. Smith uses a wheelchair for mobility. His disability limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Smith is, accordingly, a person

with a disability pursuant to the ADA, in that he has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.  Defendant, JP Foods LLC., is a Limited Liability Company that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, JP Foods LLC, "operates" and "leases" the Dunkin Donuts quick service restaurant (hereinafter "Dunkin QSR" or "restaurant") located at 7140 Airways Blvd., Southaven, MS. 38671. 42 U.S.C. § 12182. The Dunkin QSR is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, Dunkin QSR is a place of public accommodation in that it is an establishment serving food and drink to the public. Accordingly, it is covered by the ADA and must comply with the Act.

5.  Defendant, Aucallutim LLC (hereinafter "Aucallutim"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from the property records on the Desoto County Geographical Information System, Aucallutim "owns" the real property and its improvements located at 7140 Airways Blvd., Southaven, MS 38671 and "leases to" JP Foods LLC. 42 U.S.C. § 12182.

6.  All events giving rise to this lawsuit occurred in the Northern District of Mississippi and the Defendants are citizens thereof.

7.  Plaintiff John Smith travels from his home in Muscle Shoals, Alabama to the Memphis, Tennessee area at least once a year and usually more often. Plaintiff enjoys going to the Memphis area and enjoys staying at the Peabody Hotel because of its atmosphere and

to watch the ducks parade into the lobby. During his travels to and from the Memphis area, he often stops at the Dunkin Doughnuts in South Haven as it is located on his path of travel between his home and the Memphis area. Mr. Smith intends to continue dining at Dunkin because he enjoys the hot variety of coffee beverages and assortment of donuts, bagels and muffins that are offered there. He will return not only to eat, but also to confirm compliance with the ADA by the Defendants. Plaintiff cannot provide a specific time and date upon which he will return to the restaurant because he has not and should not be expected to engage in such definite future planning. Plaintiff, like other fast food customers, often patronizes a fast food establishment on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to Dunkin in the near future. He will continue to dine there when it has been made ADA compliant.

8.      Because of the barriers described herein, Plaintiff has been denied full and equal enjoyment of the Defendants' premises on the basis of his disabilities.

9.      Plaintiff accordingly, has Article III standing to pursue this case because (1) he is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendants' restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the establishment due to newly constructed architectural barriers, discriminatory policies and procedures, and by Defendants' denial of the use of the restaurant for his full and equal enjoyment as compared to people without disabilities. and (4) Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers remain at the facility.

### COUNT ONE
*Failure to Design and Construct in Accordance with the ADA Standards*
**(Architectural Barriers)**

10.     Plaintiff incorporates by reference and realleges all the paragraphs above.

11.     The Defendants have failed to design and construct their restaurant in accordance with the ADA standards as required and they have failed to bring their restaurant into compliance with the applicable ADA Standards when the facility was subsequently altered.

12.     In enacting the ADA, Congress found, among other things that Persons with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S. C. §12101(A)(5).

13.     In response to these findings, Congress explicitly stated that the purpose of the ADA was to:

> A. Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;
>
> B. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and
>
> C. Invoke the sweep of congressional authority, including the power the enforce the Fourteenth Amendment and to regulate commerce, in order to address the

major areas of discrimination faced on a daily basis by people with disabilities. 42 U.S.C. § 12101(b)(1)(2) and (4).

14.     The ADA requires that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, were required to be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." was and is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to strictly comply with the "new construction" standards is if the design and construction of the building in accordance with the ADA Standards is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15.     New construction and alterations must strictly comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 or 2010 Standards apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991

Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

16.     Plaintiff is informed and believes based on publicly available information that the building in which the restaurant is located was constructed during 2007.

17.     Plaintiff is further informed and believes based on publicly available information that the restaurant underwent alterations and/or improvements after 2015.

18. The following is a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude or limit Plaintiff's ability (because of his disabilities) to access the Property and/or fully and equally enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered in the facility. The citations are to the ADA 2010 Standards, because the 2010 Standards are applicable to modifications made after March 15, 2012. 28 C.F.R. § 36.406(5)(ii).

A. Out of the total number of parking spaces at the restaurant, Defendant has failed to provide the required number of accessible parking spaces. § 208.2 and 508;

B. Defendant has failed to provide at least one "van" accessible parking space measuring 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measuring 96 inches wide with a 96-inch-wide adjacent access aisle. § 208.2.4 and 502.2;

C. Defendant has failed to provide required signage for accessible parking. § 502.6 and 502.2;

D. Defendant has failed to provide the required minimum slope level at the existing designated accessible parking spaces and access aisles because running and/or cross slopes exceed the maximum slope requirement of "no less than 1:48 in any direction", in violation of §208 and §502.4;

E. Defendant has failed to provide an accessible route from the designated access aisle to the curb ramp because the route overlaps the traffic lane. §502.3.4;

F. Defendant has failed to provide the required accessible routes from the parking lot to the entrance, including uneven paths of travel. §206, 402 and 403;

G. Defendant has failed to provide the entrance on the shortest accessible route to the designated accessible parking spaces. §208.3.1;

H. The slope of the curb ramp leading from the parking area is too steep in violation of §406;

I. The self-servicing condiment counters and self-servicing drink dispensers and counters fail to comply with the reach ranges of §308 and §904.5.1;

J. The dining area does not contain the required 5% of the tables which meet the height and knee clearance requirements of §226 and §902.3;

K. The restrooms do not have room identification signs in the required location. §703;

L. The hardware on the restroom door requires tight grasping and twisting to operate. §309.4;

M. The men's restroom door does not have the required maneuvering clearance on either the push or pull side of the door. §404.2.4;

N. The single-user restroom does not have the required turning space or maneuvering clearance at the fixtures due to the size and configuration of the room. §604.3.1;

O. The side grab bar fails to extend 54 inches minimum from the rear wall §609;

P. The toilet paper dispenser is not located the required distance from the toilet. §604.7

Q. The toilet centerline is not located the required distance from the side wall. §6.4.2;

R. The lavatory faucets require tight grasping in violation of §606.4;

**S.** The mirror and soap dispenser are located above the required reach ranges. §308, §606, §603.3;

**T.** The clear floor space at the lavatory fails to comply with the ADA Standards for Accessible Design because the knee and toe clearance restricts the usability by persons using wheelchairs. §606.2;

19. The above itemization is not intended to be an all-inclusive list of the barriers, conditions and violations of the ADA encountered by Plaintiff and existing at the Property. Although, 19. the above listing, in and of itself, denied and still denies Plaintiff, due to his disabilities, and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered at the Property in violation of the ADA. Plaintiff requires full and complete inspection of the Property, with full access thereto, in order to determine all of the Defendants' discriminatory acts violating the ADA relevant to Plaintiff's disabilities.

20. Plaintiff believes that violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the Statute. Failure of Defendants to "design and construct" and alter this facility in compliance with the ADA's New construction standards is a direct violation of the statute, and, more specifically, has a discriminatory impact on Plaintiff and all persons similarly situated.

## COUNT TWO
*Failure to modify policies, practices, and procedures which deny equal access to benefits and services*
### U.S.C. § 12182(b)(2)(A)(ii))

**21.** Plaintiff incorporates by reference and realleges all the paragraphs above.

**22.** The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, persons with disabilities must receive equal benefits as compared to the benefits received by persons without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

**23.** The ADA requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Creating unlawful architectural barriers by failure to design, construct and alter the facility in accordance with the ADA Standards as set forth in Count One of this Complaint is but one component of compliance with Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other

opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

24.     For this reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

25.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: *"a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with*

*disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."*

26.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, full and equal access to goods or services to persons with disabilities.

27.     The Defendants either have no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The architectural barriers identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

28.     Defendants obvious disregard for compliance with the ADA's alteration standards reflects, at a minimum, a centralized policy which excludes persons with disabilities in the planning and implementation of alterations of the facility. Renovation of the facility afforded Defendants a post-construction opportunity to bring the restaurant into compliance with the ADA Standards, but Defendants' policies and practices of non-compliance with the ADA's alteration standards effectively ensure that persons with disabilities continue to have unequal access to the services and accommodations offered.

29.     Defendants' policies and practices at the restaurant literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those policies and practices include but are not limited to:

   A. Defendants deny accessible and useable parking to persons with disabilities;

   B. The existing signage displaying the international symbol of accessibility is identifying and directing individuals with disabilities to parking spaces that do

not comply with the ADA Standards for Accessible Design. This policy has a discriminatory effect on persons with disabilities;

C. Defendants provide an unequal path of travel from the parking area to the entrance by maintenance of a non-compliant curb ramp as a part of the path of travel. These barriers may force some persons with physical disabilities to seek assistance getting into and out of the restaurant. This discriminatory impact is a direct result of Defendants' policy of failure to maintain or provide a required accessible path of travel.

D. The seating arrangements in the dining area are designed, positioned, and oriented in a way that excludes or otherwise segregates persons who use wheelchairs. Persons using wheelchairs are therefore excluded from the diversity of seating locations and scenery offered to persons without disabilities;

E. Defendants make its toilet facilities inaccessible for use by persons with disabilities by failing to maintain the required ADA accessible elements and fixtures within the restrooms so that Plaintiff is denied the opportunity to independently use all the features in the restroom;

F. Defendants fail to provide required signage displaying the International Symbol of Accessibility which informs and directs people with disabilities to the ADA accessible elements within the restaurant. The lack of signage indicates that Defendants do not claim to have ADA accessible elements within the restaurant and that Plaintiff is forced to rely on trial and error to decide

which elements he can use, if any, unlike his non-disabled counterparts who can freely use all elements of the restaurant;

G. Defendants' actions are a direct result of its discriminatory policies which effectively exclude customers with disabilities from enjoyment of the goods and services offered.

30. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants either have no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

31. To date, the Defendants' discriminatory policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations.

32. Defendants, "own" and "operate" the restaurant which is the subject of this action and are therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

33. Plaintiff, hereby, provides sufficient notice of his demands for a modification of Defendants' policies, practices, and procedures.

34. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. he is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 1220534.

35.     Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
*Plaintiff has been denied Full and Equal Enjoyment of the goods, services and facilities of the restaurant*
**(42 U.S.C. §12182(a))**

36.     Plaintiff incorporates by reference and realleges all the paragraphs above.

37.     42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

38.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

39.     Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to*

*compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

40.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

41.     The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

42.     The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

43.     To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of

physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

44.     For that reason, the Act applies to any barrier that denies or diminishes disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation. 42 U.S.C. 12182.

45.     The keystone for analysis of full and equal enjoyment is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide guests with disabilities with a like experience.* Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005).

46.     Plaintiff specifically and definitely wants to return to the Defendants' Dunkin QSR. However, Plaintiff demands to be afforded the same level of service and same experience that is offered to non-disabled individuals. The following is a list of some of the unequal treatment and services at Defendants' QSR which have been experienced by Plaintiff:

   A. Defendants fail to provide an accessible parking area and accessible route for individuals with disabilities which means Plaintiff and others similarly situated cannot determine if there is a useable, accessible parking space, cannot independently exit a vehicle and use a mobility device to enter the Restaurant, and cannot independently travel from the parking area into the facility;

   B. The seating area is arranged and designed in a manner which excludes individuals with disabilities and denies them the same seating options enjoyed by non-disabled customers; because individuals with disabilities are forced to

sit at tables which do not provide the necessary, required knee and toe clearance and/or a useable height;

C.  Defendants fail to provide an accessible restroom for persons with disabilities, which means that, unlike people without disabilities, individuals with disabilities are challenged or denied the opportunity to independently use the restroom, move throughout the restroom, and effectively use all the restroom fixtures and elements;

D.  Defendants' failure to provide proper interior and exterior signage at the Restaurant creates confusion for persons with disabilities as to what routs and/or elements and spaces are accessible and useable, while persons without disabilities have a different experience in that they are not compelled to speculate about which parts of the facility are useable;

E.  Defendants' continued failure to maintain ADA accessibility as an integral part of the highest possible dining experience has segregated or otherwise treated Plaintiff and others similarly situated differently, in that the inaccessible features at the Restaurant makes Plaintiff dependent on family or an independent third party, which is not the same dining experience afforded to persons without disabilities.

47.     Accordingly, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA because Defendants have segregated and separated persons with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*"

*H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

48.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the Dunkin QSR.

49.     Defendants' conduct and Defendants' unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction, Defendants will continue to treat Plaintiff and others similarly situated unequally.

50.     Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendants will continue to fail to maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

51.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

52.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**WHEREFORE**, premises considered, John Smith demands judgment against the Defendants on Counts One, Two, and Three, and requests the following injunctive and declaratory relief:

1.  That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.  That the Court enter an order directing the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make their business practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendants to provide Plaintiff full and equal access both to the Dunkin QSR experience and to the use of the establishment, and further order Defendants to maintain the required accessible features at their facility so that Plaintiff and others similarly situated are offered the same experience that is offered to members of the general public without disabilities, as stated in Count Three. 42 U.S.C. § 12182(a);

5.  That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with

disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

7.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this _22_ Day of _May_____, 2018.

/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**Bradley D. McAdory**
MS BPR # 10545
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this _22_ day of May, 2018 to the following:

**JP Food LLC,**
c/o Registered Agent
9245 Hudson Rd
Hernando, MS. 38632

**Aucallutim LLC,**
c/o Registered Agent
12435 Plunkett Road
Gulfport, MS. 39503

/s/ _____
**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*